Strafford,
No. 5023.

ERNEST ABEL, *Adm'r*

*v.*

HARRY E. YOKEN *& a.*

Argued March 7, 1962.

Decided April 3, 1962.

*Burns, Bryant & Hinchey* ( *Mr. Donald R. Bryant* orally), for the plaintiff.

*Devine, Millimet & McDonough* (*Mr. Shane Devine* orally), for the defendants.

BLANDIN, J.   The fundamental questions before us are, first, whether upon the evidence it could be found that the accident shortened Mrs. Abel's life and, second, whether the Court erred in permitting plaintiff's counsel to argue the defendants' failure to produce certain witnesses.

It appears that Mrs. Abel, who was seventy-two years of age at the time of the accident, on March 10, 1957, fell while in the defendants' restaurant.  At the time she was returning to her table from the ladies' room, after having finished the main course of her dinner.  She was taken to the hospital, where she was treated for a broken hip sustained in her fall, and at the expiration of sixteen days she was discharged to a convalescent home.  On April 3, 1957, she was readmitted to the hospital, where she remained until her death some ten weeks later on June 16.  An autopsy reported that

she died as a result of a cancer of her bladder which had spread to her lungs and that the fracture, which "appears unrelated to the disease," was nearly healed.

The only medical evidence in the case consists of the hospital record and the testimony of the deceased's physician, concerning whose qualifications no question is raised. He had treated Mrs. Abel for some years previously and gave his opinion that her fall so lowered her resistance that it was "a cause of her death." He further stated that she probably would have lived six months to a year longer than she did, had it not been for the accident, since her inoperable cancer of some eight years duration had previously remained localized in her bladder and was progressing slowly. On cross-examination, the doctor elaborated somewhat on his testimony, saying that before her accident "there was a control of this thing," but afterward there was a swift spreading of the malignancy, which he attributed to her lower resistance due to her injury, and that she did then "rapidly get worse and die."

While the defendants rely upon *Miller* v. *Nat'l Cabinet Co.*, 8 N. Y. 2d, 277, in the state of this record before us we believe that this uncontradicted testimony of a qualified medical expert witness warranted submitting to the jury the question of whether Mrs. Abel's accident hastened her death. *Bohan* v. *Company*, 98 N. H. 144, 147; *Walter* v. *Hagianis*, 97 N. H. 314, 316-317. In a similar situation, the Supreme Judicial Court of Massachusetts did not hesitate to reach a like conclusion. *Murphy's Case*, 328 Mass. 301.

It follows that the defendants' exception to the Court's ruling permitting the jury to consider whether Mrs. Abel's accident hastened her death is overruled.

To determine the validity of the defendants' remaining exception to the allowance of the plaintiff's argument as to the failure of the defendants to produce certain witnesses, it is necessary to examine the record. The plaintiff claims that the floor of the restaurant had been waxed and buffed the day before Mrs. Abel's injury, that a tray had been dropped in the area just before she fell, and that the surface there was "greasy" with food particles upon it. The defendants asserted that no tray had been dropped, that "there was absolutely nothing on the floor," and that Mrs. Abel fell because she turned her heel. It appeared that a waitress, Barbara Buckingham, in the area of whose station the accident occurred, came immediately to the scene, along with one of the four bus boys, who is unidentified in the record, and who were on duty that day.

This bus boy picked up pieces of a cup and saucer which the deceased had knocked off a table when she fell.

Mrs. Buckingham's name was first introduced by defendants' counsel in direct examination of Mrs. Yoken, where the following colloquy occurred: "Q. How long had she worked for you? A. A year or a little over. Q. Do you know where she is now? A. No, I tried to find out this morning and I went to the last place I knew she was employed, thinking they might know where she was and the answer that I got was that she left town a year ago. Q. You couldn't find her? A. No. We tried to find her and bring her here as a witness. [*defendants' counsel*]: Thank you. You may inquire."

Plaintiff's counsel then brought out the fact without objection that Mrs. Yoken had never tried to find the witness until "this morning," that she knew the case had been pending for some years, and that her deposition had been taken a year and a half previously. On redirect, defendants' counsel elicited from Mrs. Yoken the testimony that at the time her deposition was taken she believed Mrs. Buckingham was in Illinois with her husband "at the Shute Air Base" and that afterward she saw Mrs. Buckingham on the street in Portsmouth, New Hampshire, "but I didn't talk to her."

With reference to the bus boys, the record discloses that the defendants had the names of all of them in a book where they kept records of the names of their employees. There is no evidence of any effort by the defendants or on their behalf to locate the bus boy who came to the scene immediately after the accident and who picked up pieces of the cup and saucer knocked to the floor by Mrs. Abel as she fell. So far as appears, this bus boy and Mrs. Bucking-ham, who arrived at the scene while Mrs. Abel was still on the floor, were the first employees of the defendants to reach the place where the accident happened.

The decisive fact on the vital issue of liability was whether there was grease and food particles on the floor, as the plaintiff claimed, upon which Mrs. Abel slipped and fell, or whether, as the defendants stoutly maintained, no tray had been dropped and "there was absolutely nothing on the floor."

The defendants argue in their brief: "The law is clear that before comment can be made on the failure of a party to call a witness, there must be evidence that the witness is accessible for the purpose of testifying." This is not the rule, which is that it need not appear that the witness is accessible, but only that he

be "seemingly accessible." *Beardsell* v. *School*, 89 N. H. 459, 462-463. However, plaintiff's counsel in the present case went no further than to ask the jury "to consider the conduct of the defendants with respect to whether or not they have attempted to produce Mrs. Buckingham," and in relation to the bus boy, counsel stated: "I just say no evidence has been produced of any attempt on the part of the defendants to locate him."

The rationale of the rule permitting comment on the failure to produce certain witnesses rests on the proposition that whenever the conduct of a party in a trial is such as fairly gives rise to an inference that he lacks confidence in his case, it is proper to comment upon it. *Martel* v. *White Mills*, 79 N. H. 439, 442-443; *Amundsen* v. *Company*, 96 N. H. 85, 87-88. In the situation before us, the lack of any real effort to have available the testimony of Mrs. Buckingham or the bus boy, either by their actual presence in court or by their depositions, was such as to bring the case squarely within this principle, as stated in *Brito* v. *Company*, 79 N. H. 163. There the Court spoke as follows (*p.* 164): "Counsel for the plaintiff commented in argument upon the absence from the trial of a man who, as a witness, upon the defendant's theory of the case, could have given material evidence in its favor. It appeared that he was not then in Newmarket and that the defendant did not know where he was; but there was no evidence that the defendant had attempted to locate him or that he was out of the jurisdiction. Upon this state of the facts the plaintiff's counsel was justified in arguing that the missing witness would not support the defendant's contention."

Certainly upon the defendants' theory of the case before us, these two witnesses, Mrs. Buckingham and the bus boy, could have given material and perhaps decisive evidence in the defendants' favor.

In regard to Mrs. Buckingham, whose name was introduced by defendants' counsel, the inference, prior to cross-examination, could clearly have been drawn by the jury to the effect that her testimony would have been helpful to the defendants, and counsel for the plaintiff had a right to seek to overcome this inference. The principle established by the *Brito* case has long been the law here (*Mitchell* v. *Railroad*, 68 N. H. 96), and we see no occasion to depart from it.

Furthermore, the Court's denial of the defendants' motion for a new trial was a finding that the trial was fair. We do not question

this conclusion, and the defendants' exception to the allowance of plaintiff's argument is overruled.

Notwithstanding the foregoing, the contention of counsel for the defendants that the general rule followed in the *Mitchell* and *Brito* cases may be abused, is not to be taken too lightly. Courts should be vigilant to guard against any such attempt by counsel. See *Carbone* v. *Railroad*, 89 N. H. 12. It should also be borne in mind that "argument of this character is not to be commended" because of its "tendency to divert the attention of the jury from the issues presented . . . to collateral questions of the credibility and good faith of a party." *Amundsen* v. *Company*, 96 N. H. 85, 88.

However, in the circumstances of the present case, as previously stated we believe counsel's argument was within the bounds of legitimate advocacy.

The order is

*Judgment on the verdict.*

All concurred.