Hillsborough
No. 80-169

# THE STATE OF NEW HAMPSHIRE

v.

# JESUS RAMOS

October 7, 1981

864

*Gregory H. Smith,* attorney general (*Brian T. Tucker,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* appellate defender, and *Devine, Millimet, Stahl & Branch,* of Manchester (*Mr. Duggan* and *Lee C. Nyquist* on the brief, and *Mr. Nyquist* orally), for the defendant.

KING, C.J. The Hillsborough County Grand Jury indicted the defendant, Jesus Ramos, for the crimes of attempted first-degree murder, felonious use of a firearm, and possession of a handgun by a felon. After a trial, the jury found the defendant not guilty on the charge of attempted murder but guilty of the lesser-included offense of aggravated assault. The jury also found the defendant guilty of felonious use of a firearm and possession of a handgun by a felon.

On appeal, the defendant asserts that the Trial Court (*Bean,* J.) erroneously failed to instruct the jury with respect to the effect of certain character evidence introduced by the defendant and with respect to the inferences that may be drawn from the State's failure to call a particular witness. The defendant also contends that the trial court improperly restricted the scope of his cross-examination of one of the State's witnesses. We reverse the defendant's conviction and remand for a new trial.

At approximately midnight on July 30, 1979, the Manchester police responded to a report of a shooting incident at a housing project in that city. Upon their arrival, Officer LeBlanc and his partner learned that the defendant had shot a neighbor, Danny Hackett. Officer LeBlanc's superior requested him to locate Hackett's girlfriend, Doris Denoncourt, and to question her about the shooting. After finding her, Officer LeBlanc accompanied her to the rear of her apartment building so that she could enter her apartment and get her shoes. Apparently, the rear entrance was the only one unlocked. When the two reached the rear of the building, they encountered the defendant, who was armed. Officer LeBlanc and the defendant gave dramatically different accounts of what happened at this point.

Officer LeBlanc testified that the defendant pointed his gun at him and stated that, "I need a hostage. You will be my hostage." He further testified that he intended to draw his own weapon and demand that the defendant disarm himself but that the defendant

shot him as he attempted to draw his weapon. The defendant, however, testified that he did not point his gun at Officer LeBlanc until the officer had drawn his gun. The defendant also testified that Officer LeBlanc said, "You're a dead man," and asked the defendant whether he intended to take him hostage. According to the defendant, he responded that he did intend to take the officer hostage but only for the purpose of reaching the front part of the building safely so that he could surrender himself to the police. The defendant testified that Officer LeBlanc then shot him and that he, in turn, shot the officer in self-defense.

During the defendant's cross-examination of Officer LeBlanc, he attempted to question the officer about his familiarity with the police department's standard operating procedure in hostage situations as expressed in the department's Standard Operating Procedure Manual. The trial court disallowed this line of questioning.

The defendant argues that it was error for the court to refuse to allow him to question Officer LeBlanc with regard to the police department's standard operating procedure concerning the handling of a hostage crisis. The defendant asserts that he should have been permitted to cross-examine the officer with respect to the department's procedure because the defendant sought to establish that the officer's failure to comply with these procedures provided the motive for him to testify falsely at trial and to deny the fact that he shot first. We agree.

■■ The right to cross-examine adverse witnesses in criminal cases is fundamental. *State v. Howard*, 121 N.H. 53, 58, 426 A.2d 457, 460 (1981). Cross-examination is necessary to ensure that the defendant "shall have a right to produce all proofs that may be favorable to himself; to meet the witnesses against him face to face, and be fully heard in his defense. . . . " N.H. CONST. pt. 1, art. 15. Because cross-examination of adverse witnesses is often crucial to a person's defense, we have recently allowed cross-examination of a prosecutrix concerning her prior sexual activities, *State v. Howard*, 121 N.H. at 61, 426 A.2d at 462, and concerning inconsistent statements regarding her virginity made prior to trial, *State v. LaClair*, 121 N.H. 743, 433 A.2d 1326 (1981).

■ Although the latitude permitted on cross-examination is within the discretion of the trial court, *Kennedy v. Ricker*, 119 N.H. 827, 832, 409 A.2d 778, 781 (1979); *State v. Pevear*, 110 N.H. 445, 446, 270 A.2d 598, 599 (1970), and the broad discretion of the trial court to fix the limits of cross-examination applies to attacks upon a witness' credibility as well as other proper subjects of cross-examination, *id.*, 270 A.2d at 599; *State v. Foster*, 80 N.H. 1,

4, 113 A. 211, 213 (1921), the trial court may not completely deny a defendant the right to cross-examine a witness on a proper matter of inquiry.

■■ That the defendant shot Officer LeBlanc is not in doubt; he admits that he shot the officer. He asserts, however, that the officer fired first and that he acted in self-defense. The question presents a classic credibility question calling for wide and vigorous cross-examination of both the officer and the defendant. *See Alford v. United States*, 282 U.S. 687, 691–92 (1931); *United States v. Barrentine*, 591 F.2d 1069, 1081 (5th Cir.), *cert. denied*, 444 U.S. 990 (1979); *United States v. Fowler*, 465 F.2d 664, 666–67 (D.C. Cir. 1972). We hold that it was reversible error for the trial court to deny the defendant the opportunity to question the officer concerning his knowledge of and compliance with the department's standard operating procedures in a hostage situation in an attempt to establish that the officer's failure to follow the procedures provided him with a motive to fabricate his version of the incident. *See State v. Howard*, 121 N.H. at 61, 426 A.2d at 462.

Although our decision on the cross-examination issue is sufficient to require reversal of the defendant's conviction and a second trial, in the interest of judicial economy we will consider the defendant's remaining two assignments of error, as the issues are certain to arise in the new trial. *State v. LaClair*, 121 N.H. 743, 433 A.2d 1326 (1981); *State v. Pugliese*, 120 N.H. 728, 731, 422 A.2d 1319, 1321 (1980).

The defendant introduced character evidence as a part of his defense. Carmelo Valentin testified that the defendant was a leader in "Project Hope," an Hispanic community group that worked with young people. Valentin stated that the defendant was respected in the community for his honesty and trustworthiness. Sister Pauline Chabot, a pastor-minister in the Hispanic community, testified that the defendant was a leader in the community and regarded as a trustworthy and honest man.

The defendant argues that it was error for the trial court to refuse to instruct the jury in accordance with his proposed instruction on the effect of character evidence. The defendant requested the following instruction:

> "The defendant has introduced evidence of his good reputation in the community. Such evidence may indicate to you that it is improbable that a person of good character would commit the crime charged. You should consider this evidence along with all other evidence in determin-

ing whether the State has proven the guilt of the defendant beyond a reasonable doubt. The circumstances of the case may be such that evidence of good character may alone create a reasonable doubt of a defendant's guilt, although without it, the other evidence would be convincing. *See Michelson v. United States*, 335 U.S. 469 (1948)."

██ In a criminal case, the defendant has a right to make his good character an issue whether or not he takes the stand. He has a right to introduce evidence of his good character so "that the jury may infer that he would not be likely to commit the offense charged," *Michelson v. United States*, 335 U.S. 469, 476 (1948), and the jury should be instructed on the effect of character evidence produced at trial. It was error for the court to fail to give a character evidence instruction.

██ The State argues that no such instruction was required because the character evidence presented at trial concerned the defendant's reputation for truth and veracity and his involvement in community affairs, rather than his reputation for peacefulness and his tendency against violent acts. In *State v. Kelley*, 120 N.H. 14, 19, 413 A.2d 300, 303–04 (1980), we allowed evidence of the witness' prior convictions to impeach his credibility even though the crimes did not involve dishonesty. The jury "should be informed of what kind of person is asking them to take his word." *State v. Cote*, 108 N.H. 290, 296, 235 A.2d 111, 115 (1967), *cert. denied*, 390 U.S. 1025 (1968).

We note that the defendant's requested instruction would have informed the jurors that the defendant's character alone could create a reasonable doubt of guilt, thereby requiring acquittal. We disagree.

██ There is language in *Michelson v. United States*, 335 U.S. 469, 476 (1948) that supports the defendant's theory. Courts that have considered this matter since *Michelson* was decided, however, have split on whether the jury must be instructed that character evidence "standing alone" is sufficient to create a reasonable doubt. Some courts have held that this instruction must be given where the evidence warrants it, *see United States v. Lewis*, 482 F.2d 632, 637 (D.C. Cir. 1973); *United States v. Donnelly*, 179 F.2d 227, 233 (7th Cir. 1950), whereas other courts have held that the instruction given is sufficient if it informs the jury that it is to consider character evidence "along with all the other evidence" in determining whether reasonable doubt exists, *see United States v.*

*Foley*, 598 F.2d 1323, 1336–37 (4th Cir. 1979), *cert. denied*, 444 U.S. 1043 (1980); *United States v. Malinowski*, 472 F.2d 850, 859 (3d Cir.), *cert. denied*, 411 U.S. 970 (1973); *United States v. Fontenot*, 483 F.2d 315, 323 (5th Cir. 1973); *United States v. Lachmann*, 469 F.2d 1043, 1046 (1st Cir. 1972), *cert. denied*, 411 U.S. 931 (1973). We conclude that, because character evidence is only one of many circumstances relevant to the issue of a defendant's guilt, the instruction to the jury should not give it more emphasis than other evidence. Accordingly, we hold that an instruction that the jury consider the evidence of the defendant's character along with all the other evidence is the proper instruction to be given when the evidence warrants a character evidence instruction. *See People v. Trimarchi*, 231 N.Y. 263, 266, 131 N.E. 910, 911 (1921); *People v. Ingram*, 49 A.D.2d 865, 865, 374 N.Y.S.2d 327, 329 (1975).

 The defendant next argues that it was error for the trial court to refuse to instruct the jury that it could infer from the State's failure to produce an eyewitness to the incident, Doris Denoncourt, that her testimony would have been unfavorable to the State.

It is well settled in this State that counsel may comment upon the failure of the opposing side to produce a witness available to it and may argue that the testimony of that missing witness would be damaging. *See Walker v. Walker*, 106 N.H. 282, 288, 210 A.2d 468, 472–73 (1965); *Musial v. McGuire*, 96 N.H. 281, 282–83, 74 A.2d 377, 377–78 (1950). This right to comment on the absence of a material witness is limited, however, to situations where the missing witness is "seemingly accessible." *Abel v. Yoken*, 104 N.H. 119, 122–23, 179 A.2d 456, 459 (1962). In such situations, the judge should instruct the jury that it may infer that the testimony of the witness would be unfavorable to the party in a position to produce him. *See Commonwealth v. Jones*, 455 Pa. 488, 495, 317 A.2d 233, 236–37 (1974); *State v. Jones*, 598 S.W.2d 209, 224 (Tenn. 1980). The court should not give the instruction, however, where the witness is equally available (or unavailable) to both sides. *See People v. Stridiron*, 33 N.Y.2d 287, 293 n., 307 N.E.2d 242, 245 n., 352 N.Y.S.2d 179, 183 n. (1973); 1 WHARTON'S CRIMINAL EVIDENCE §§ 148–49, at 249–54 (13th ed. 1972).

 A review of the record reveals that the defendant attempted to depose the witness, attempted to have her held on bail, and hired a private investigator to locate and to serve her with a subpoena. The sheriff's department of Hillsborough County assisted the defendant's investigator by tracing the registration of

a car in which the witness was seen riding. Despite these efforts, the witness could not be located and did not appear at trial. A party does not entitle himself to a missing witness instruction simply by proof that he has attempted to produce the witness. Rather, he must prove that the witness was within the control of or otherwise available to the other side at the time of trial and unavailable to himself. *See People v. Fiori*, 123 A.D. 174, 187, 108 N.Y.S. 416, 426 (1908). The defendant did not establish at trial that the missing witness was available to the State. Accordingly, the defendant was not entitled to the instruction.

In his brief, the defendant makes a serious allegation that the State "employed coercive tactics" in order to discourage the witness from testifying at trial. Specifically, the defendant asserts that Tim Roberge, a friend of the defendant's, testified that he had spoken with the witness and that she told him that the police had threatened her with the loss of her child if she testified. Our review of the record discloses that Roberge actually testified that the police allegedly threatened her with the loss of her child if she did *not* testify. The defendant's allegation of police misconduct is therefore inconsistent with his claim that the police failed to call an available witness. We stress, however, that there was no substantial evidence that any such threats were made. In pressing this issue, the defendant relies solely on Roberge's second-hand accounts of the alleged threats.

██ Ordinarily, there is no obligation on the part of the State to produce all witnesses to an incident. Because of the unique circumstances of this case, however, we strongly encourage the State to make all reasonable efforts to locate Ms. Denoncourt and to produce her at trial, or to be prepared to explain at trial the unsuccessful efforts that it made to produce her. The evidence that Ms. Denoncourt may be able to provide could determine the outcome of the trial. If at all practicable, the jury should hear her account of the incident.

*Reversed and remanded.*

BATCHELDER, J., did not sit; the others concurred.