Hillsborough
No. 86-332

THE STATE OF NEW HAMPSHIRE

v.

JORGE OTERO

June 8, 1987

*Stephen E. Merrill,* attorney general (*T. David Plourde,* assistant attorney general, on the brief), by brief for the State.

*Joanne Green,* assistant appellate defender, of Concord, by brief for the defendant.

BROCK, C.J. The defendant, Jorge Otero, was convicted of possession of marijuana with intent to sell, RSA 318-B:26, following a jury trial in Superior Court (*Bean*, J.). On appeal, the defendant argues that the trial court (1) abused its discretion in allowing the State to introduce a statement he made at the time of his arrest, and (2) erred in allowing the prosecutor to question him concerning his failure to produce corroborating witnesses. For the reasons that follow, we affirm.

Trial testimony of the arresting officer, Kevin Ainsworth, revealed that he encountered the defendant on the morning of July 8, 1984, while on routine patrol. Officer Ainsworth testified that he observed the defendant standing next to a vehicle, with his hands inside the passenger window. He further testified that the vehicle immediately pulled away when the occupants noticed his marked cruiser. Thereupon, Officer Ainsworth approached the defendant and asked him what he was doing. The defendant responded, "Nothing." At this point the officer noticed that the defendant's front pockets on his jacket, and the pockets of his pants, were bulging. Officer Ainsworth then asked the defendant what was in his pockets. The defendant responded by pulling his hands out of his pockets, opening up his coat, and saying, "Nothing."

However, when the officer pointed to the defendant's left front jacket pocket and asked the defendant what was in that pocket, the defendant pulled out a Marlboro cigarette box, opened the top of the box, and showed the officer its contents. According to Officer Ainsworth, the defendant then admitted, "This is the first time I've ever done this. I've never done this before." The officer observed that the box contained hand-rolled cigarettes. Subsequent searches of the defendant disclosed more cigarettes and about $86 in small denominations. Tests later revealed these cigarettes to be marijuana. The defendant was arrested, read his rights, charged, and convicted of possession of marijuana with intent to sell.

Testifying at trial through an interpreter, the defendant claimed that he found the marijuana on the ground just prior to being stopped by Officer Ainsworth. He admitted being in possession of the marijuana, but denied any intention to sell it. He further testified that he doesn't understand English, and that he only responded to the police officer because he understood the officer's hand signals. He also denied telling the officer, "This is the first time I've ever done this. I've never done this before."

We first address the defendant's argument that the trial court abused its discretion in denying a portion of his motion *in limine*, thereby allowing the defendant's incriminatory statement into evidence. On appeal, the defendant contends that the danger of undue

prejudice outweighs the probative value of his admission. Additionally, the defendant contends that in light of his deficiencies in understanding and communicating in English, his statement to the officer in English was inaccurate. A review of the motion *in limine* and defendant's argument before the trial court, as to why the statement should be suppressed, reveals that no allegation was made that this specific statement should be suppressed because its probative value is substantially outweighed by the danger of unfair prejudice. N.H. R. Ev. 403. In the motion *in limine*, the defendant merely suggests that because he did not understand what the officer was saying to him, the accuracy of any response made by him to the officer in English should be questioned. Thus, we need only consider whether the trial court abused its discretion in admitting the defendant's allegedly inaccurate statement into evidence. *State v. Brodeur*, 126 N.H. 411, 417, 493 A.2d 1134, 1139 (1985).

The defendant argues that he is a native of Puerto Rico who does not understand a great deal of English, and was only able to understand the officer when the officer used hand motions. He further asserts that his inability to understand English required him to employ the assistance of an interpreter at trial and at the suppression hearing. The defendant contends that these factors, coupled with the officer's acknowledgment that the defendant had some difficulty with pronunciation, call into question the reliability of the statement he allegedly made to the officer in English.

Contradictory evidence, however, was also produced at the suppression hearing. The defendant testified that he had been living in the United States for approximately 3 1/2 years prior to his arrest. Further, Officer Ainsworth testified that, except for some difficulty in pronouncing particular words, the defendant appeared to understand him, and responded in English to his questions. Given this evidence, taken as a whole, we are satisfied that there was no abuse of discretion by the trial court in admitting the incriminatory statement into evidence.

We next address the defendant's argument that the trial court erred in allowing the prosecutor to question the defendant about his failure to call corroborating witnesses. On direct examination, the defendant stated that after finding the marijuana, he displayed it to three individuals in a nearby park. During cross-examination, the following exchange occurred:

Prosecutor: "And who were these three individuals you were showing the mari[j]uana to?"

Defendant: "I know who they were by sight, but I

| (through an interpreter) | haven't seen them all this long." |
|---|---|
| Prosecutor: | "And did you make any attempt to contact them to come to court today?" |

Defense counsel objected to the last question, arguing that the defendant is not required to present any evidence or any witnesses. The trial judge allowed the question, explaining that he thought the jury understood that point, and that he would be sure to instruct them to that effect. The defendant responded to the question by explaining that he did not make any attempt to contact them because he had not seen them. This line of questioning was not pursued by the prosecutor.

Referring to *State v. Kelly*, 113 N.H. 222, 306 A.2d 58 (1973), the defendant contends that it was error for the trial court to allow the State to develop a missing witness inference by questioning the defendant, because the questioning had the effect of suggesting that the defendant has the burden of proving his innocence by producing witnesses to corroborate his testimony. In *Kelly*, the issue was whether it was proper for the prosecutor to comment in his closing argument upon the fact that the defendant failed to call his wife as a witness to support his testimony that he was with her at the time of the alleged crime. *Id.* at 222, 306 A.2d at 59. The defendant's wife was in court throughout the trial, but was never called as a witness by either party. *Id.* at 223, 306 A.2d at 59. We held that, where the defendant testifies as to his activities with a potential witness, ostensibly to establish an alibi, his failure to call such an available and competent witness is a proper subject of comment on the part of the State. *Id.*

After a thorough review of the record, we conclude that the defendant's reference to *dicta* in *Kelly* and the missing witness inference is unfounded in the present case because there is nothing in the record to suggest that the State actually invoked the missing witness inference. The missing witness inference is implicated either when a party argues the inference in closing argument or when an instruction on the inference is obtained or requested from the trial court. *See State v. Ramos*, 121 N.H. 863, 435 A.2d 1122 (1981) (jury instruction); *State v. Kelly*, 113 N.H. 222, 306 A.2d 58 (1973) (comment by counsel).

In the present case, the prosecutor made a simple inquiry into the identity of the witnesses and their availability for trial. *See Com. v. Fredette*, 486 N.E.2d 1112, 1119 (Mass. 1985). The record does not reflect that the State argued the missing witness inference to the jury during its closing argument, nor does it show that the trial

judge instructed the jury on the inference. At best, the prosecutor's line of questioning was merely an attempt to establish the prerequisite for invoking the missing witness inference; that is, that the missing witness is seemingly accessible to the other side. *See Ramos, supra* at 869, 435 A.2d at 1126. The prosecutor ascertained, through his questioning, that he could not establish that the witnesses were available to the defendant; thus he did not pursue the matter any further.

The defendant implies that the act of questioning itself developed the inference that the defendant failed to prove his innocence by failing to produce corroborating witnesses. This implication is not supported by the record. Following the questioning, the jury was clearly advised through a colloquy between the trial judge and the defense attorney that the defendant did not have to produce any evidence or any witnesses. Furthermore, at the close of the case, the court instructed the jury on the presumption of innocence and the burden of proof in criminal cases.

█ Thus, we conclude that reversible error did not occur in this case. Accordingly, we affirm.

*Affirmed.*

All concurred.