Rockingham
No. 2007-540

THE STATE OF NEW HAMPSHIRE

v.

ALAIN ATA

Argued: January 14, 2009
Opinion Issued: March 5, 2009

*Kelly A. Ayotte*, attorney general (*Thomas E. Bocian*, attorney, on the brief and orally), for the State.

*Lothstein Law Offices, PLLC*, of Concord (*Theodore Lothstein* on the brief and orally), for the defendant.

DALIANIS, J. The defendant, Alain Ata, appeals from a jury verdict in Superior Court (*Coffey*, J.) convicting him of receiving stolen property, *see* RSA 637:7 (2007), burglary, *see* RSA 635:1 (2007), and conspiracy to commit burglary, *see id.*; RSA 629:3 (2007). On appeal, he contends that the trial court erred in permitting the State to introduce certain inculpatory statements made by co-defendant Matthew Cook. We affirm.

The jury could have found the following facts. On December 9, 2004, while Linda and Robert Fournier of Salem were away on a business trip, their home was burglarized. The house was ransacked and a television and jewelry valued at more than $500 were taken. On December 13, 2004, a similar burglary occurred at the home of Jeffrey Smith in Salem. The burglars stole numerous items and smashed photographs of Smith's stepdaughter. The defendant had previously dated Smith's stepdaughter, and had had a disagreement with Smith over money the defendant claimed Smith owed him.

Shortly after the burglaries, Pelham police arrested Cook and co-defendant Craig Sullivan. Cook confessed to the police that he and the defendant had burglarized the Fournier home. He also confessed that the defendant had pointed out Smith's home as a worthwhile target, and told him when Smith would not be at home. Cook also stated that the defendant refused to participate in the Smith burglary because he would be an obvious suspect due to his prior relationship with Smith.

Following Cook's confession, the police went to the defendant's apartment, which he shared with Sullivan and co-defendant Daniel Desjardins. With the consent of all of them, the police searched the apartment and in the defendant's bedroom found the Fourniers' television. When the police seized the television, the defendant stated that the police "had him" on the crime of receiving stolen property, but not burglary. He also stated that the burglary "wasn't even a good charge because he hadn't yet plugged in . . . the television . . . ." The police found other stolen items in Desjardins' bedroom.

Soon after this seizure and acting upon information from Sullivan that the defendant intended to sell some of the stolen jewelry, the police set up surveillance of the defendant's apartment. At one point, the defendant left the apartment and walked to a dumpster, then returned inside. Shortly thereafter, the defendant and Desjardins got into a car and drove off. The police stopped them, and upon finding a sock full of stolen jewelry in Desjardins' pocket, arrested them. Desjardins then led the police to a box of stolen jewelry in the dumpster the defendant had visited. The police subsequently recovered several other stolen items from a local pawnshop.

At trial, after Cook was given immunity, he testified that he had burglarized the Fournier home. He also identified the defendant as his friend. When asked who else was involved in the Fournier burglary, however, he stated that he could not recall. He also testified that he did not recall the defendant identifying Smith's home as a burglary target. In the end, he denied remembering most of the details of the burglaries, contending that his memory was impaired by drug use.

The prosecutor was permitted to confront Cook with his prior confessions to the police. Cook recalled some minor details but generally continued to profess that he could not recall either the burglaries or his statements to the police. During a brief cross-examination, defense counsel asked Cook about his drug use, but did not question him about the Fournier and Smith burglaries or any matters directly related to them.

Following Cook's testimony, the State, over the defendant's objection, was allowed to introduce Cook's confessions to the police through officers of the Pelham Police Department. The officers testified that Cook had admitted to the Fournier and Smith burglaries, and explained the defen-

dant's involvement in them. They also testified that Cook did not appear to be under the influence of drugs or alcohol during the interview. The jury convicted the defendant, and this appeal followed.

On appeal, the defendant contends that introducing Cook's confessions to the Pelham police violated his rights to confrontation secured by the Sixth Amendment to the United States Constitution and Part I, Article 15 of the New Hampshire Constitution. According to the defendant, because Cook stated that he could not recall many of the relevant details of the crimes, he was not available for cross-examination as guaranteed by the State and Federal Constitutions. The parties agree that the federal constitutional claim has been resolved by our recent opinion in *State v. Legere*, 157 N.H. 746 (2008), *petition for cert. filed* (U.S. Jan. 9, 2009) (No. 08-8220). Accordingly, we address only the defendant's claim under the State Constitution.

■ Although the United States Supreme Court has modified its Confrontation Clause analysis, *see Crawford v. Washington*, 541 U.S. 36 (2004), we have not adopted, and neither party argues that we should adopt, *Crawford* under the State Constitution. *See Legere*, 157 N.H. at 750. As neither party argues for the imposition of a different standard, we confine our analysis to the standard under *Ohio v. Roberts*, 448 U.S. 56, 66 (1980). *Id.* at 751. Under the *Roberts* standard, "the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." *Roberts*, 448 U.S. at 65. If a witness is determined to be unavailable, a prior statement may be admitted if it bears adequate "indicia of reliability." *Id.* at 66 (quotation omitted). Reliability "can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." *Id.* "In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Id.*

Here, the defendant contends that because Cook testified that he could not recall the details of the burglaries, he could not be subjected to meaningful cross-examination. Therefore, despite his presence on the witness stand, he was not, in fact, "available." Further, the defendant contends that Cook's confession does not otherwise bear adequate indicia of reliability rendering it admissible.

■ We must first determine whether Cook was, in fact, unavailable as a witness though present for questioning at trial. Neither party points to, and we are not aware of, a case where we have squarely decided the issue as a matter of state law. In resolving the question under the Federal Constitution in *Legere*, 157 N.H. at 753-55, we relied upon a line of United States Supreme Court cases including *California v. Green*, 399 U.S. 149, 162

(1970), *Delaware v. Fensterer*, 474 U.S. 15, 16, 21-22 (1985) (*per curiam*), and *United States v. Owens*, 484 U.S. 554, 564 (1988), which concluded, in essence, that the presence of a witness at trial for cross-examination removes any bar raised by the Confrontation Clause, regardless of the degree of the witness's memory impairment. *Crawford's* rejection of *Roberts* did not undermine either *Green*, which was decided ten years before *Roberts*, or *Fensterer* and *Owens*, which were decided after *Roberts*. *See Legere*, 157 N.H. at 755; *see also State v. Price*, 146 P.3d 1183, 1191 (Wash. 2006). In fact, as we have noted, the United States Supreme Court specifically relied upon *Green* in concluding that a declarant's appearance at trial removes all Confrontation Clause constraints upon the use of prior testimonial statements. *Legere*, 157 N.H. at 755; *Crawford*, 541 U.S. at 59 n.9. Given that *Green, Fensterer* and *Owens* remain good law under the Federal Constitution, we see no reason to depart from them under the State Constitution.

The defendant, however, urges us not to apply the reasoning of *Owens* and its predecessors because we have previously tied the confrontation protections of Part I, Article 15 to another right unique to the New Hampshire Constitution, the right to produce all proofs favorable. Citing *State v. Ramos*, 121 N.H. 863 (1981), *abrogated on other grounds by State v. Graf*, 143 N.H. 294, 298 (1999), the defendant argues that if a declarant contends that he does not recall the relevant events, a defendant is prevented from having all proofs favorable to his defense produced and from being fully heard in his defense. We disagree.

■ While we agree, as a general matter, that cross-examination helps to preserve a defendant's right to all favorable proofs, *see Ramos*, 121 N.H. at 866, we do not agree that this right is vitiated when a defendant is unable to conduct his desired cross-examination of an available declarant. "The right to produce all favorable proofs under Part I, Article 15 give[s] a defendant only the right to produce witnesses, not to produce their testimony." *Graf*, 143 N.H. at 296. While a declarant's lack of memory may thwart the cross-examination the defendant wishes to attempt, the fact remains that the declarant is present to be examined.

■ Accordingly, because Cook was on the stand to answer questions, he was "available," within the meaning of *Roberts*, despite his lack of memory. Because Cook was available it was not error under the State Constitution for the trial court to allow the introduction of his prior statements, regardless of whether they bore adequate indicia of reliability.

*Affirmed.*

BRODERICK, C.J., and DUGGAN and HICKS, JJ., concurred.