Argued at Pendleton May 6, modified and remanded June 17, 1919.

# STATE *v.* NEWLIN.*

(182 Pac. 133.)

### Intoxicating Liquors—Sale—Sufficiency of Evidence.

1. In prosecution of druggist for the unlawful sale of liquors, evidence *held* to establish guilt beyond any reasonable doubt.

[As to illegal sales of intoxicating liquors, see note in 12 **Am. St. Rep.** 353.]

### Criminal Law—Appeal—Technical Error.

2. Where the evidence establishes plaintiff's guilt beyond any reasonable controversy, judgment of conviction will be affirmed under Article VII, Section 3, of the Constitution, notwithstanding technical errors.

### Witnesses—Impeachment—Evidence of Crimes.

3. In prosecution for the unlawful sale of liquor, evidence that a witness who testified to having purchased liquor from defendant had himself been, at one time, a bootlegger, was inadmissible, where it was not claimed that witness had been convicted of illegal sales of intoxicating liquor.

### Criminal Law—Evidence—Entrapment.

4. In prosecution for the unlawful sale of liquor, evidence that a witness who had testified to buying liquor from defendant had upon another occasion in another county liquor in his possession was inadmissible in support of theory that the liquor which defendant was alleged to have sold had been planted in his store by witness, where there was no evidence of a conspiracy to entrap defendant and no evidence to support such theory.

### Criminal Law—Submission of Theories.

5. A party is entitled to have his theory of the case presented\to the jury if there is evidence to support such theory.

### Witnesses—Cross-examination—Motive and Interest.

6. In prosecution for unlawful sale of liquor, where detective had testified to buying liquor from defendant, it was not improper for court to refuse to permit defendant to continue cross-examining detective as to his motives and interest in the case, after his interest in case had been fully disclosed by cross-examination.

### Criminal Law—Instructions—Entrapment—Evidence.

7. In prosecution of druggist for unlawful sale of liquors, requested instruction that defendant could not be convicted if the liquor in evidence had been planted in the store by the witness who testified to having purchased it, and the druggist had not in fact sold liquor, was

*On evidence of other crimes in prosecution of violation of liquor law, see note in 62 **L. R. A.** 230, 290, 325.     REPORTER.

properly refused, where there was no evidence that the witnesses who had testified to purchasing liquor had brought the liquor to the store.

**Criminal Law—Instructions on Evidence.**

8. Court is not required to instruct specially upon every item of testimony introduced.

**Criminal Law—Instructions—Singling Out Evidence.**

9. It is bad practice to single out a particular item of testimony and give it undue prominence in an instruction.

**Criminal Law—Second Offense—Indictment.**

10. Defendant cannot be adjudged guilty of a second offense and sentenced accordingly, in the absence of an allegation in the indictment charging the prior conviction.

From Union: JOHN W. KNOWLES, Judge.

In Banc.

The defendant was indicted upon a charge of unlawful sale of intoxicating liquor to one Ed Johnson. Upon the trial the testimony of the state was substantially as follows: The defendant, at the time the alleged offense was committed, was engaged in conducting a drug-store in La Grande, Oregon, known as the La Grande Pharmacy, which, in addition to carrying drugs, also dealt in candies and other articles frequently sold in such establishments.

The county officials, in the course of their investigations into alleged violations of the liquor laws, got into communication with one John E. Smith, also called Joe Smith, who had been working in connection with the Baker County officers in the detection of such offenses, and engaged him to do similar detective work in Union County.

While in La Grande for this purpose, Smith met Ed Johnson, whom he had formerly met in Pendleton, but who had recently been working with a threshing crew in Union County. Johnson invited Smith to go with him to Newlin's drug-store and get a drink.

They entered the store and called for drinks, which were served to them from a bottle behind the prescription counter. The liquor had the color and general appearance of whisky and an intoxicating effect. Newlin remarked that it was pretty strong stuff. The price charged by Newlin was twenty-five cents a drink. They discussed with Newlin the question of buying four dozen pint bottles of the liquor, but said they would see if they had the money to pay for it. Smith reported to the chief of police of La Grande, who furnished him with $20, which, with the money he had, made $50, sufficient to purchase 14 pints of the liquor. He then returned and found that Newlin had three candy buckets packed with the mixture. After paying $50 for a bucket containing 14 pints, he took it to his room. For the purpose of disguising the contents, some grapes and apples were placed on top of the bucket.

Late in the afternoon, about 6 P. M., Johnson went back and purchased a small candy pail of the liquor, paying therefor $21.50, was arrested while on the way to his room with it, indicted for having intoxicating liquor in his possession, plead guilty and was sentenced to 60 days in jail and a fine of $300, which sentence he was serving at the time of the trial of the case at bar.

It was for this sale Newlin was on trial in the instant case. The back room of his store was searched and a third candy pail, packed with intoxicating liquor, was found. There was a slight flavor of sweet spirits of nitre in the compound, and several jugs, which had contained that drug, were found in the back room of the drug-store.

It was testified by a competent chemist that sweet spirits of nitre is a highly volatile substance, which evaporates at a lower temperature than alcohol, and that by exposing it to the air in a flat container, the nitre would evaporate, leaving the alcohol constituent remaining. The theory of the state was, that the alcohol in the liquor had been obtained either by this process or by some other method of distillation. All the liquor sold to Johnson or Smith, or seized by the authorities, contained about 36 per cent of alcohol by volume.

Other witnesses testified to having bought similar liquor of defendant from time to time. Other facts appear in the opinion.

The defendant was convicted and sentenced to be confined in the county jail for a period of one year, and to pay a fine of $100, the judgment reciting that this was the second conviction under the Prohibition Act.          MODIFIED AND REMANDED.

For appellant there was a brief with oral arguments by *Mr. Francis S. Ivanhoe* and *Mr. R. J. Green.*

For the State there was a brief over the names of *Mr. John S. Hodgin,* District Attorney, and *Mr. George M. Brown,* Attorney General, with an oral argument by *Mr. Hodgin.*

McBRIDE, C. J.—1, 2. In spite of technical points suggested by able and ingenious counsel for appellant, there is one fact established beyond any reasonable controversy, namely: That the evidence proved beyond a doubt not only that the defendant was guilty in the present instance, but also that he was a frequent and persistent violator of the law, practically conducting

a saloon for the sale of intoxicants under the guise of a drug-store. Admitting that the principal witness for the prosecution is a man of bad reputation, and that the person to whom defendant sold the liquor is of doubtful character, no sane, fair juryman could have listened to the testimony adduced and thereafter have entertained the least doubt as to the guilt of the defendant. And perhaps we could stop at this, so far as the principal contention is concerned, and base our decision upon Article VII, Section 3, of our amended Constitution, but in deference to the able argument of counsel for the defense, we will consider briefly the objections urged by them.

3. Much is made of the refusal of the court to allow evidence to be introduced that the witness Smith had, himself, been a "bootlegger," and had offered to sell whisky to persons in Baker County. The evidence was irrelevant to any issue in the case on trial, and was properly excluded. It was not claimed that he had ever been convicted of illegal sales of intoxicating liquors and the evidence of such offers was no more admissible than would have been evidence that he had attempted to commit assault and battery, or any other misdemeanor.

4. It is claimed the evidence was material as tending to show that Smith had liquor in his possession, and that it was within his power to have taken it to the La Grande Pharmacy and "planted" it there, in order to entrap Newlin. In other words, it was proposed to prove that Smith possessed liquor, which he might have used for such purpose, by showing that upon another occasion, in another county, he had said that he then had liquors, and to bind the state in the instant

case by these unsworn declarations. There is no rule under which such testimony is admissible.

There was not the slightest evidence that Smith and Johnson were engaged in a conspiracy to entrap Newlin. Smith took advantage of his acquaintance with Johnson, and Johnson's confidence in him, to discover that Johnson was buying liquor from Newlin, and thereupon had him arrested, fined and sent to jail. That this was a part of a conspiracy entered into by Johnson to entrap Newlin, is giving him credit for a zeal in enforcing the liquor laws that passes human credulity. Nor was there any evidence that Johnson "planted" any liquor in the back room of Newlin's place of business. A witness did testify that late in the evening of the day when Newlin was arrested, he saw an automobile drive near Newlin's back door and saw the witness Johnson get out with a box about the size of an apple box. He did not see what was done with the box; had no idea of its contents, and upon this apocryphal story counsel would build up a theory that Johnson was engaged in a conspiracy to place the liquor, which he subsequently took away, in the candy bucket and thereby ensnare Newlin.

5. A party is entitled to have his theory of the case presented to the jury if there is evidence to support such theory, but there is absolutely no evidence to support the theory that the liquor Johnson was arrested for carrying away at half-past 6 in the evening, was placed by him in the drug-store at half-past 5, or that he ever put any liquor in the drug-store.

Error is predicated upon the ruling of the court, sustaining objections to questions, asked witness Smith by counsel for defendant, concerning his motives for engaging in the prosecution of this case. Upon the cross-examination Smith was questioned very closely

as to his motives for engaging in the detective work, and answered, among other things, the following questions:

"Q. Now, the interest you have in this case, Mr. Smith, is the money consideration you can get out of it, isn't it?

"A. It is the good I can do for the country.

"Q. Patriotic good, I suppose?

"A. Well, I am here to make some money out of it too."

He was then asked, if—upon the preliminary examination—he did not say: "I ain't here just for the sport there is in this," and denied using those exact words, but admitted he did say part of it, and that he expected to get paid for his services. In the Justice's Court, in answer to interrogations in regard to whether or not he expected to be paid for his services, he answered, "I wasn't here for my health." The witness admitted he expected to be paid for his services; how much he did not know, but that he was employed as a detective and expected to be paid.

Several other questions, relating to motive, were asked and objections to them were sustained, but even if the answers had been permitted, and they had been in the affirmative, they would have added nothing to the force of the facts already elicited, namely: That the witness was a hired detective, brought in the county under promise of a reward, which he expected to get, and which was uncertain in amount.

6. The jury must have been fully aware of his motives, and while it perhaps would have been as well for the court to have allowed counsel to turn him inside out upon cross-examination, it was not improper for the court to check it when the interest of the witness

was as fully disclosed as it was here by what had already been elicited.

Counsel for appellant asked the following instruction, which was refused by the court:\

"I instruct you, that if you believe from the evidence in this case, that the liquor in evidence was brought to said store by Ed Johnson, or by Ed Johnson and Joe Smith, and that the defendant Adolph Newlin, did not sell said liquor to said witnesses, then you should find the defendant not guilty."

7-9. There was no evidence that either Smith or Johnson brought the liquor to the store and the instruction was properly refused. Even if there had been such evidence the general instruction, that the jury could not convict unless they were satisfied beyond a reasonable doubt that Newlin sold the liquor to Johnson, was sufficient to cover all that defendant was entitled to have given on that subject. The court is not required to instruct specially upon every item of testimony introduced. Indeed, it is bad practice and sometimes reversible error to single out a particular item of testimony and give it undue prominence in an instruction.

Other parts of the court's charge are criticised, but we consider the objections without merit.

10. It was also suggested upon the argument that it was error to adjudge the defendant guilty of a second offense and sentence him accordingly, in the absence of an allegation in the indictment charging the prior conviction, and this seems to be the general holding of the courts: 22 Cyc. 356, and cases there cited.

The judgment will therefore be set aside and the cause remanded to the Circuit Court with direction to re-sentence the defendant, without taking into consideration his prior conviction for a like offense. In all

other respects the proceedings in the lower court are affirmed.      Remanded With Directions.

Benson, Burnett and Harris, JJ., concur in the result.

