Argued March 2, reversed March 25, 1976

STATE OF OREGON, *Petitioner,*
*v.*
DONALD DEE DOWELL, *Respondent.*

547 P2d 619

 

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for petitioner. With him on the briefs were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem, and John Petersen, certified law student, University of Oregon Law School, Eugene.

*John K. Hoover,* Deputy Public Defender, Salem, argued the cause for respondent. With him on the brief was Gary D. Babcock, Public Defender, Salem.

TONGUE, J.

## TONGUE, J.

Defendant was convicted of robbery in the first degree in Medford. In appealing to the Court of Appeals he contended that the trial court erred in excluding testimony by the victim of the robbery, Pamela Chestine, and defendant's girl friend, Mary McDowell, that Mrs. Chestine had been paid $100 upon her agreement not to testify against defendant. That evidence was offered by defendant to impeach the credibility of Mrs. Chestine, the state's witness.

The Court of Appeals reversed the conviction by an opinion which rejected the state's contention that such evidence was not admissible to impeach Mrs. Chestine because no foundation for it had been laid during her cross-examination. 23 Or App 136, 541 P2d 829 (1975). In response to a petition for reconsideration, the Court of Appeals then held that "usually opposing counsel should confront the witness with the impeaching incident during cross-examination," but that such a foundation was not required in this case because defendant "instead chose to confront the witness with the incident directly by calling her as the defendant's own witness." 23 Or App 718, 543 P2d 1078 (1975).

We granted a petition for review by the state because of our concern whether these opinions by the Court of Appeals, and the methods of impeachment of witnesses approved by them, represent a correct application of the law on this subject, particularly for use in criminal cases.

1. *The offered testimony of Mrs. Chestine, the state's complaining witness.*

Mrs. Chestine was the complaining witness for the state as the victim of the alleged robbery. She testified that defendant met her in a bar and offered to drive her back to her motel; that upon arriving there defendant and a companion, who had previously taken from her a gun which she had in her purse, demanded "my

money if I had any"; that they then took her purse, with $89, and that she then ran and called the police. On cross-examination defendant's attorney made no inquiry about the subsequent payment of $100 to her.

Upon the arrest of defendant later the same evening he was found to have $73 and the gun was found under the seat of his car. The empty purse was found in a trash can after its location was disclosed by defendant's companion, a Mr. Damron, who was arrested at the same time.[1]

After the state had rested its case the defense called Mrs. Chestine as its first witness and asked whether after that incident she "had occasion to call upon" Mrs. McDowell, defendant's fiancee. Upon objection by the state the defendant then made an offer of proof by eliciting testimony of Mrs. Chestine, out of the presence of the jury, to the effect that at the house of Mrs. Damron, wife of defendant's companion, and in a conversation with Mrs. McDowell, Mrs. Chestine said that she "wanted my money back," in the sum of $100, and that "she [Mrs. McDowell] came up and offered me the money back * * * if I would not testify * * *." Mrs. Chestine also testified to a subsequent conversation with Mrs. McDowell and Mrs. Damron at which time she was paid $100 by them.

Defendant's attorney then contended that the offered testimony was admissible to impeach the credibility of Mrs. Chestine and her previous testimony as the state's complaining witness. The state's attorney objected on the ground that such testimony "has no relevance with respect to the truthfulness of this witness." That objection was sustained.

Matters which would otherwise be irrelevant may be offered to show the bias or interest of a witness. *O'Harra v. Pundt,* 210 Or 533, 543, 310 P2d 1110 (1957). We agree with the Court of Appeals in its hold-

---

[1] A more detailed summary of the evidence is not required for consideration of the issues raised on this petition for review.

ing that to discredit a witness it may be shown that he accepted a bribe to testify or not to testify and that this offered evidence would have been admissible to impeach the credibility of Mrs. Chestine had such evidence been properly offered.[2] We do not, however, agree with the holding by that court to the effect that such evidence was properly offered.

Wholly aside from the question whether a proper foundation was required for such testimony and, if so, whether such a foundation was laid during the cross-examination of Mrs. Chestine as a state's witness, we cannot condone the practice attempted by defendant's attorney in this case. Under such a practice the defendant's attorney in a criminal trial could deliberately withhold cross-examination of any state's witness on any fact which would tend to impeach the credibility of the testimony for the state by the witness, wait until after the state has rested its case and then, and after further time for preparation, call that witness, nominally as a defense witness, but in fact for the sole purpose of impeaching the credibility of the witness.

Such a practice would be contrary to the general rule forbidding a party to impeach his own witness.[3] In addition, such a practice would be disruptive of the orderly conduct of trials in criminal cases, with the result that it cannot be approved as a matter of good judicial administration. There may be occasions when the usual order of proof in a trial may be changed upon

---

[2] The supplemental opinion by the Court of Appeals notes that such evidence may be classified as evidence to show "corruption," rather than "bias," citing 3A Wigmore on Evidence 803-04, 969, §§ 956, 1005. "Bias" may be used in a broad sense to include "corruption." See McCormick on Evidence 78-80, § 40 (2d ed 1972). We agree, however, that "corruption" is a more accurate description of such conduct. In any event, the same rules of admissibility are applicable, with the result that such evidence is admissible under circumstances such as those involved in this case, when properly offered. We recognize, however, that such evidence should not be confused with evidence of particular wrongful acts when offered to impeach a witness by proof of bad moral character. See McCormick at 83, § 42.

[3] See *Rhodes v. Harwood,* 273 Or 903, 544 P2d 147 (1975). As recognized in that case, that rule has exceptions. It is not contended, however, that this case falls within any of such exceptions.

application to and approval by the trial judge, but this was not such an occasion.

For these reasons, we hold that the trial court did not err in excluding defendant's offer of proof of the further testimony of Mrs. Chestine. The fact that the state's objection to the offer of proof was on the wrong ground is immaterial, under the rule that a trial court will not ordinarily be reversed for sustaining an objection to evidence if there was any ground upon which the objection should have been sustained.[4]

## 2. *The offered testimony of Mrs. McDowell*

Defendant also made an offer of proof of the testimony of Mrs. McDowell. That offer of proof, also made out of the presence of the jury, was to the effect that after defendant's arrest and after she had "contacted Mrs. Chestine"; that she was present at the home of Mrs. Damron on an occasion when Mrs. Chestine "said she wanted money or she would make sure she sent them to prison"; that "she asked for $100" and "said she was leaving town"; that "she said she was coming back at 1:00 o'clock the next day"; that the next day Mrs. Chestine returned with a large man who made various threats; that Mrs. McDowell then "handed her the money" and then promptly reported the incident to the police.

This offer of proof was also objected to by the state "on the same grounds to which I based objections to Mrs. Chestine's statements * * * to relevancy." That objection was also sustained.

The questions raised by the offer of proof of the testimony of Mrs. McDowell, however, are not the same as those raised by the offer of proof of the testimony of Mrs. Chestine. Regardless of whether or not it was improper for defendant to call Mrs. Chestine as its own witness, for reasons previously discussed, the

---

[4]See *City of Portland v. Therrow et al,* 230 Or 275, 277, 369 P2d 762 (1962). Again, there are also exceptions to this general rule. See McCormick, Evidence, *supra,* 116, § 52. It is not contended, however, that this case falls within any of such exceptions.

defendant had the right to call other witnesses to impeach the credibility of the testimony of Mrs. Chestine as a state's witness, provided that defendant did so properly. This raises the question whether any preliminary "foundation" was required before the testimony of Mrs. McDowell could properly be offered to impeach the credibility of Mrs. Chestine.

ORS 45.610 provides that before a witness can be impeached by the offer of evidence that he has made a "prior inconsistent statement," such a "foundation" is required in that "the statements must be related to him, with the circumstances of times, places and persons present, and he shall be asked whether he made the statements, and if so, allowed to explain them."

This court has held that a similar foundation must be laid before a witness can be impeached by an offer of evidence that the witness made a prior statement showing that he had a bias or interest, despite the fact that ORS 45.610, by its terms, does not extend to such statements. *State v. Holbrook,* 98 Or 43, 65, 188 P 947, 192 P 640, 193 P 434 (1920); *National Bank v. Assurance Co.,* 33 Or 43, 50, 52 P 1050 (1898); *State v. Ellsworth,* 30 Or 145, 153-54, 47 P 199 (1896) and *State v. Stewart,* 11 Or 52, 53-54, 4 P 128 (1883). See also Annot., 87 ALR 2d 407 (1963). However, this court has not previously had occasion to consider whether such a foundation should also be required before a witness can be impeached by an offer of evidence that the witness has engaged in *conduct* showing that he had a bias or interest.[5]

McCormick advocates a rule requiring such a foundation "as to both or neither." Thus, as stated in McCormick on Evidence 80-81, § 40 (2d ed 1972):

"A majority of the courts impose the requirement of a

[5] Cf. *State v. Hale,* 248 Or 159, 162, 432 P2d 694 (1967), in which defendant was charged with assault with a dangerous weapon and offered evidence that one of the prosecuting witnesses had admitted at a preliminary hearing that after the fight he had taken a pistol and had gone looking for the defendant. We held that such evidence was not admissible because a proper foundation had not been laid by asking the witness "that question" at the time of his testimony.

foundation question as in the case of impeachment by prior inconsistent statements. Before the witness can be impeached by calling other witnesses to prove acts or declarations showing bias, the witness under attack must first have been asked about these facts on cross-examination. A minority decline to impose this requirement. Fairness to the witness is most often given as the reason for the requirement, but the saving of time by making unnecessary the extrinsic evidence seems even more important. Some courts, adhering to the analogy of inconsistent statements, make a difference between declarations and conduct evidencing bias, requiring the preliminary question as to the former and not as to the latter. But as suggested in a leading English case, words and conduct are usually intermingled in proof of bias, and 'nice and subtle distinctions' should be avoided in shaping this rule of trial practice. Better require a 'foundation' as to both or neither * * * [footnotes omitted]."

We agree with that view. In this case, however, most of the offered testimony by Mrs. McDowell related to prior *statements* by Mrs. Chestine in her demand that a payment be made to her, rather than to her *conduct* in accepting that payment. As previously stated, a prior foundation was required by the rule long established by decisions of this court before Mrs. McDowell could properly be asked to testify to such statements.

Such a foundation should have been laid while Mrs. Chestine was being cross-examined by defendant immediately following her testimony as a state's witness. Not having been done at this time, defendant could not wait until after the state had rested and then call Mrs. Chestine as a defendant's witness for the purpose of impeaching her, for reasons previously stated. It follows that because of the lack of such a proper foundation the testimony of Mrs. McDowell could not then be offered by defendant to impeach the credibility of Mrs. Chestine as a state's witness. It also follows that the trial court did not err in excluding this

[ 554 ]

offer of proof despite the fact that the objection by the state was not made upon the proper ground.[6]

We would note, however, that the *statements* by Mrs. Chestine relating to the payment and her conduct in accepting the payment were so interrelated as to lead us to the conclusion that the proposal by McCormick that a "foundation" should be required for "both or neither" is correct, at least as applied to a case such as this.[7]

For all of these reasons, the decision by the Court of Appeals is reversed and the judgment of conviction of the trial court is affirmed.

---

[6]See note 4, *supra*.

[7]Because of the basis on which we decide this case we also need not consider defendant's further contention that it would be unfair to him to adopt in this case a "new" rule requiring such a "foundation" for proof of *conduct* showing bias or interest and, in effect, to apply such a rule "retroactively" to the trial of his case.