Argued and submitted August 2, reversed and remanded for new trial in all cases except A22981 which is affirmed September 15, 1982

STATE OF OREGON,
*Respondent,*

*v.*

JAMES EDWARD MITCHELL,
*Appellant.*

(No. C81-01-30173, CA A22695)
(No. C81-01-30174, CA A22696)
(No. C81-01-30177, CA A22697)
(No. C81-01-30179, CA A22698)
(No. C81-01-30490, CA A22699)
(No. C81-01-30564, CA A22700)
(No. C81-01-30680, CA A22701)
(No. C81-01-30692, CA A22702)
(No. C81-01-30724, CA A22703)
(No. C81-01-30794, CA A22704)
(No. C81-04-32134; C81-04-32135, CA A22705)
(No. C81-04-31987, CA A22981)
(Cases Consolidated)

650 P2d 992

Marilyn C. McManus, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

## THORNTON, J.

Defendant was indicted on 12 counts of theft in the first degree, five counts of unauthorized use of a motor vehicle and two counts of burglary in the first degree. Although some of the charges were dismissed, defendant was convicted after jury trial on the bulk of them.[1] They arose out of a large-scale "sting" operation conducted during 1980 by the Multnomah County Sheriff's Office. The operation was constructed around and carried out at the Cameo Tavern, which was purchased by the Sheriff's Office and used as the site for the pretended "fencing" transactions. The thefts involved a large number of items ranging from guns and U.S. Savings Bonds to television sets and automobiles. A State Police officer named Richard Stein, who acted as night bartender at the tavern, was the front man who handled all of the transactions with defendant, who was arrested in February, 1981.

Before trial, defendant gave notice that he would rely on the defense of entrapment. He testified in his own defense. He denied participating in any of the burglaries or thefts in which the property involved in the charges was stolen and testified that he had begun by selling first, his own property and then stolen property friends and relatives brought to him because he needed money. He averred that his representations to the undercover officers that he had stolen some of the property were made only to encourage them to buy it.

On appeal, defendant places greatest emphasis on his first assignment of error, namely, that the trial court erred in failing to give defendant's requested entrapment instruction.[2] Entrapment is defined in ORS 161.275:

"(1) The commission of acts which would otherwise constitute an offense is not criminal if the actor engaged in the proscribed conduct because he was induced to do so by a law enforcement official, or by a person acting in cooperation with a law enforcement official, for the purpose of

---

[1] These cases were consolidated, for sentencing and on appeal, with defendant's conviction after a plea of guilty for delivery of a controlled substance (CA A22981). Defendant does not challenge that conviction, which we affirm.

[2] Defendant requested Uniform Jury Instruction for Criminal Cases 403.05 for the defense of entrapment. No issue was raised at trial or on appeal as to whether that instruction correctly states the law.

obtaining evidence to be used against the actor in a criminal prosecution.

> "(2) As used in this section, 'induced' means that the actor did not contemplate and would not otherwise have engaged in the proscribed conduct. Merely affording the actor an opportunity to commit an offense does not constitute entrapment."

It is well settled that a party is entitled to have the jury instructed on the law that supports his theory of the case if there is evidence to support that theory and the party submits an instruction that correctly states the law. *State v. Castle,* 48 Or App 15, 19, 616 P2d 510 (1980). It is likewise true that a requested instruction need be given only when there is some evidence that justifies the instruction. *State v. Williams,* 270 Or 152, 526 P2d 1384 (1974). These rules apply to the giving of an entrapment instruction. *State v. Hedrick,* 28 Or App 503, 506-07, 559 P2d 1304, *rev den* 278 Or 393 (1977).

The question presented is: whether there was evidence to justify giving the requested instruction. In support of this contention, defendant relies on his own testimony. He testified that he first had gone to the Cameo Tavern in mid-February, 1980; that Richard Stein told him, "If you ever want to make any money, Mr. Mitchell, you can make a lot of money with me, because I'll buy anything from you, no matter how small a quantity, no matter how much, I'll buy anything you bring me anytime you bring it to me, 24 hours a day"; and that Stein told defendant to steal things. "He said the more expensive, the better. He said he would give me ten percent of the value of all things."

Defendant testified further that he had returned to the tavern approximately six weeks later and Stein again told him to bring over anything or to bring over other people. Defendant said he told Stein that he did not want to steal anything, because he did not want to go to jail. Stein replied, "Well, you won't go to jail because I'll take all the responsibility for you." Defendant testified further that Stein had gone to defendant's home and told him and five others to steal and that he would buy anything. On a later date, defendant said, he returned to the tavern and was again encouraged to steal. "I told him I still didn't

want to." On each occasion, Stein gave defendant his telephone number.

The following is an excerpt from defendant's testimony:

"Q  [by defense counsel] Mr. Mitchell, on some of these occasions you were present and participated in the sale of various items. Why did you do that?

"A  To get money, mainly. Sometimes for favors. For my friends. I had somebody I owed a lot of money to; if I didn't pay him, I would have got in trouble.

"Q  Did anyone encourage you to engage in that activity?

"A  Yes, Richard Stein, mainly.

"Q  If he had not encouraged you, would you have engaged in that activity?

"A  No. I would have had no reason to. What would I have done with the stuff?

"[Defense counsel]: That's all the questions I have."

On cross-examination he testified as follows:

"Q  [By the prosecutor]: Mr. Mitchell, what do you mean 'encouraged' you? You mean that he bought the stuff from you?

"A  Yes. And he encouraged me to do it every time I went over there. He would slap me on my back after I went over there and go, 'Oh, good boy, next time he goes, bring me something nicer. Why don't you get semitrucks full of tape decks or semitrucks full of this.' Or something like that."

In answer to the above, the state points out that Stein testified that he had never met defendant before the first transaction in which defendant participated and that Stein's version is corroborated by a videotape recording of that transaction. The state argues that defendant's testimony falls short of evidence that defendant would not have involved himself in the disposition of the property had the police not insisted upon his doing so. Under these circumstances, the state maintains that defendant's request for an instruction on entrapment was properly refused.

In *State v. McBride,* 287 Or 315, 599 P2d 449 (1979), a similar question was presented to our Supreme

Court in an appeal from a prostitution conviction. The arrest followed a conversation between the defendant and an undercover police officer who had picked up the defendant in an unmarked police car. The defendant testified that she was window shopping while waiting for her boy friend; that she was in desperate financial straits and told the man so; that the man offered to help her financially; that she told him that if she had $40 it would be great; and that he offered her $20 for a "car date" and subsequently arrested her. As in the case at bar, the defendant gave notice of intent to rely on entrapment as a defense. The trial court held that the defendant was not entitled to an instruction on entrapment because (1) the evidence did not support entrapment and (2) the defendant was not entitled to the defense without an admission that she had committed the crime charged. We affirmed the conviction. 38 Or App 187, 589 P2d 1164 (1979). The Supreme Court, however, reversed this court, holding that (1) because the evidence presented a jury question as to whether the defendant was entrapped within the meaning of ORS 161.275 and warranted an instruction on entrapment and (2) the defendant was not required to admit that she committed the offense before she could raise the defense of entrapment. The court said:

"* * * A criminal defendant is entitled to have his theory of the case presented to the jury if there is evidence to support it. *State v. Newlin,* 92 Or 589, 182 P 133 (1919). The trial court is not vested with discretion to refuse an instruction supported by the evidence." 287 Or at 319.

We conclude that on the record before it the trial court should not have refused the requested instruction on the ground that the evidence did not support that instruction, *State v. McBride, supra,* and that the refusal constituted reversible error.

Reversed and remanded for a new trial.