Argued and submitted September 10, 1982, reversed and remanded January 19, reconsideration denied March 4, petition for review allowed April 12, 1983 (294 Or 749) See 297 Or 789, 688 P2d 1311 (1984)

## STATE OF OREGON,
*Respondent,*

*v.*

## GARY THOMAS HUBBARD,
*Appellant.*

(No. C 81-07-33514, CA A23649)

657 P2d 707

Phillip M. Margolin, Portland, argued the cause and filed the brief for appellant.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

Warden, J., dissenting.

## GILLETTE, P. J.

Defendant was convicted in a jury trial of escape in the second degree, reckless driving and attempting to elude a police officer. He appeals, contending that the trial judge erred by refusing to allow him to cross-examine Officer Brose, the prosecution's principal witness, about his knowledge of standard police department procedures employed against officers who use unnecessary force.[1] According to defendant's counsel at trial, the purpose of the thwarted cross-examination was to "test [Brose] for bias and corruption." We reverse.

At trial, Brose and defendant gave drastically different accounts of the events that occurred the night of defendant's alleged wrongdoing. The jury believed Brose. The only issue of merit on appeal concerns defendant's attempt to impeach Brose's credibility. Summaries of both Brose's and defendant's stories follow.

Brose testified that at approximately 3:00 one morning he observed defendant speeding in downtown Portland and pulled him over. Defendant's appearance, breath odor and movements prompted Brose to ask if he had been drinking. Before defendant answered, he received a message on a paging device in his car. In response to the message, defendant told Brose he had to leave immediately. Brose told defendant that he could not go until Brose had determined that he was sober. When defendant insisted on leaving, Brose told him that he was under arrest and ordered him from the car. At that point, defendant drove off. Brose chased defendant to his house, called for cover and then attempted to handcuff defendant. Defendant resisted, hitting Brose in the face with his elbow and then attacking with his fists; Brose struck back with his service baton. The entire fight lasted between 30 seconds and one minute. Defendant then disappeared into his garage, and Brose retreated to his car to await the arrival of another officer.

Defendant claims that he was driving through downtown Portland, obeying traffic signals and traveling

---

[1] Defendant makes five assignments of error. None of the others requires discussion.

at a speed that he believed was within the limit. Brose pulled him over, asked him whether he had been speeding and drinking and asked to see his license. Defendant's pager then went off, followed by defendant's wife's voice asking him to come home immediately. Defendant told the officer that he had to go home and asked Brose to follow him. Brose did not respond and did not place defendant under arrest. Defendant left.

Brose and defendant reached defendant's house at about the same time. As defendant was getting out of his car, Brose suddenly placed a handcuff on defendant's left hand. Defendant asked Brose what was "going on." Brose asked defendant if he had ever been maced and then proceeded to hit him about a dozen times with his club. Defendant testified that he had screamed to his wife for help and tried to stop Brose's blows, but that he never struck the police officer. Defendant escaped into his house, pursued by the police officer, who banged on the door and threatened to break it down.

Defendant's version of the story was partially corroborated at trial by one of his tenants, who heard defendant screaming his wife's name. Defendant's wife also corroborated his testimony about the paging, his screams for help, his flight to safety and the police officer's threats to break into the house.

After Brose had given his version of the story at trial and defendant's counsel had subjected him to some cross-examination, the following exchanges occurred:

"Q: [By defense counsel] Now, if a Portland police officer acts unreasonably and uses too much force at an arrest scene, are there internal procedures regarding that question?

"A: Yes.

"Q: And an officer who did something like that would have to do what — stand a board trial or — by the department?

"MR. BALL: Your Honor, I'd have to object to this.
"* * * * *

"THE COURT: I sustain the objection.
"* * * * *

"As soon as we have a recess, you can make your record, Mr. Connall."

At the first recess, the following occurred:

"THE COURT: * * *

"The second question you asked was the question: 'Whenever an officer uses excessive force' — you started asking that question, and it's perfectly proper, Mr. Connall, if Mr. Hubbard — had he filed a complaint with the Police Department, you could ask him then and proceed with the inquiry, but just to make a broad statement about some officer being investigated and what is the procedure —

"MR. CONNALL: May I be heard?

"THE COURT: Certainly. * * * Just proceed with what question you were going to ask him and I'll make a ruling.

"Q: [By Mr. Connall] Are you aware of internal police procedure regarding what happens when a police officer uses too much force out on the street against a citizen?

"THE COURT: Answer.

"THE WITNESS: Yes, I am.

"Q: [By Mr. Connall] And if those charges are sustained against an officer, are you aware of what could happen to an officer?

"A: Yes.

"Q: What is that?

"A: There are varying things that can happen. Internal Affairs can decide to turn the investigation over to the detectives who may want to do it like a criminal proceeding, because, if Internal Affairs interviews me knowing that what I say is going to be used against me in court because — or any officer — because it would be coerced out of me or they could just send it to the Chief, and the Chief can decide on discipline, and the union can decide to appeal and it can go to arbitration. There's just all kinds of things that can happen.

"MR. CONNALL: Thank you.

"MR. BALL: I would have just one question in this offer of proof. Do you [police officer] know if Mr. Hubbard ever lodged an Internal Affairs complaint against you?

"THE WITNESS: I know that he has not * * *.

"MR. BALL: Thank you.

"THE COURT: I'm not going to allow the testimony on this matter of proof, but I gave a reason for it, as I said before. I assume there must be a complaint filed with the Police Department by somebody before any activity takes place. You leave an inference with this jury, in a way, that would be that he did have some complaint or something to that effect filed against him and the effect of it. This is not proper, Mr. Connall; you know it and I know it.

"* * * * *

"MR. CONNALL: I'm simply attempting to test this witness for bias and corruption. I have my record." (Emphasis supplied.)

Defendant contends that the trial judge committed reversible error by refusing to allow the impeachment. The trial judge explained his ruling by stating that the resulting evidence would leave the jury with an incorrect inference that defendant had filed a complaint against Brose. On appeal, the state recasts the judge's ruling in terms of relevancy: "The matter was too remote to constitute proper impeachment," because defendant had not indicated that he had filed or was going to file a complaint against the police officer. As we see it, the questions to be resolved are (1) whether the proffered evidence is relevant to show bias, interest and motive to testify; and (2), if so, whether the trial judge abused his discretionary authority to limit the scope of cross-examination by excluding the evidence?

■■■ A defendant in a state criminal proceeding is entitled, as a matter of federal constitutional right, to cross-examine prosecution witnesses. US Const Amend VI and XIV; *Parker v. Gladden,* 385 US 363, 87 S Ct 468, 17 L Ed 2d 420 (1966); *State v. Ramos,* 121 NH 863, 435 A2d 1122 (1981); *State v. Anthony,* __ RI __, 422 A2d 921 (1980). Although it is generally within the trial judge's discretion to limit the scope of cross-examination for bias, *Shrock v. Goodell,* 270 Or 504, 510, 516, 528 P2d 1048 (1974); *McCarty v. Hedges, et al,* 212 Or 497, 516, 309 P2d 186, 321 P2d 285 (1958), a criminal defendant should be given great latitude to cross-examine. *State v. Day,* 236 Or 458, 389 P2d 30 (1964); *State v. Williams,* 6 Or App 189, 487 P2d 100 (1971), *cert den* 406 US 973 (1972). Free and vigorous cross-examination is particularly important when prosecution and

defense witnesses give sharply conflicting accounts of the facts and the jury must assess the credibility of the witnesses. *See Alford v. United States,* 282 US 687, 691-92, 51 S Ct 218, 219, 75 L Ed 624 (1931); *United States v. Barrentine,* 591 F 2d 1069, 1081 (5th Cir), *cert den* 444 US 990 (1979); *United States v. Fowler,* 465 F2d 664, 666-67 (DC Cir 1972). Despite the breadth of a trial judge's discretion with regard to the scope of cross-examination, he can abuse that discretion by completely foreclosing a legitimate defense attempt to cross-examine. *State of Oregon v. Bailey,* 208 Or 321, 300 P2d 975, 301 P2d 545 (1956); *see also State v. Ramos, supra; State v. Anthony, supra;* McCormick on Evidence, § 40, 81 (2d ed 1972).

In this case, Brose and defendant are the only witnesses to the events giving rise to the charges against defendant. Their accounts of what happened bear little resemblance to one another. Because Brose was the only eyewitness to testify against defendant, defendant's conviction would likely have resulted from the jury's determination that his testimony was more credible than defendant's. Inasmuch as the outcome of this case probably turned on the jury's determination of credibility, it was imperative that both sides have ample opportunity to cross-examine each other's witnesses. Nonetheless, when defendant tried to show that Brose's testimony might have been motivated in part by his desire to avoid the internal disciplinary measures available against officers who use unnecessary force, the trial judge refused to allow the questions. That was error.

Although not in effect at the time of defendant's trial,[2] OEC 609-1, "Impeachment for bias or interest" (ORS 40.360), is based on case law that was in existence. Commentary to the rule states that:

"Oregon Rule of Evidence 609-1 allows any party to impeach a witness by evidence of bias or interest. * * *

"Oregon courts have long recognized that * * * the interest of a witness in the outcome of a case will slant the witness' testimony. Acts, relationships or motives that are

---

[2] The statutes then in effect did not speak directly to impeachment for bias and interest. *See* former ORS 45.510 and 45.630.

likely to produce bias or interest therefore have been examinable for the purpose of impeaching credibility.

"* * * * *

"Self-interest commonly takes the form of having a stake in the outcome of the litigation." Commentary, *Oregon Evidence Code,* 127-28 (1981).

The cases mentioned in the commentary have approved impeachment for bias and interest in a wide range of cross-examinations, some resembling defendant's attempted impeachment in this case. In *State v. Delucia,* 40 Or App 711, 596 P2d 585 (1979), an assault prosecution, the defendant attempted to demonstrate the bias of the complaining witness by showing that the witness had a financial stake in the outcome of the criminal proceeding: he intended to bring a civil suit against the defendant for damages arising from the same event that generated the criminal prosecution. The trial judge excluded the evidence as "too speculative," because the witness had not yet filed his civil action. This court found that the exclusion was error, although harmless under the facts of the case. 40 Or App 715-16. In *State v. Sheeler,* 15 Or App 96, 514 P2d 1370 (1973), a prosecution for assault and robbery, defendant tried to impeach the complaining witness for bias and interest by showing that the witness stood some chance of future prosecution for an offense arising from the same events that had led to defendant's prosecution. The trial judge ruled that the evidence was irrelevant. This court reversed, finding the evidence admissible to show the jury that the witness' testimony may have been "motivated in part by some expectation that he would personally gain thereby." 15 Or App at 100.

Other Oregon cases have allowed impeachment for bias and interest by showing: (1) that witnesses were parties to other legal actions that would be directly influenced by the outcome of the case, *Schmitz v. Yant,* 242 Or 308, 409 P2d 346 (1965); *McCarty v. Hedges et al, supra; O'Harra v. Pundt,* 210 Or 533, 310 P2d 1110 (1957); *Clevenger v. Schallhorn,* 205 Or 209, 286 P2d 651 (1955); (2) that a defendant's accomplice-turned-prosecution-witness had "a powerful motive to curry favor with the prosecuting attorney" (*i.e.,* a motive to testify for the prosecution in

order to avoid prosecution himself), *State Oregon v. Bailey, supra;* (3) that defendant and a defense witness had been acquaintances or friends when both were in the penitentiary, *State v. Guerrero,* 11 Or App 284, 501 P2d 998, *rev den* (1972); (4) that a witness had accepted a bribe to refrain from testifying, *State v. Dowell,* 274 Or 547, 547 P2d 619 (1976); and (5) that a defense witness was personally hostile to the plaintiff. *Rhodes v. Harwood,* 280 Or 399, 571 P2d 492 (1977).

Oregon does not have a case concerning precisely the type of cross-examination defendant attempted here.[3] A recent case from the New Hampshire Supreme Court is, however, almost exactly on point. In *State v. Ramos, supra,* the defendant contended that the trial judge improperly restricted the scope of his cross-examination of a police officer. The officer testified at trial that, before he had drawn his gun during a confrontation with the defendant, the defendant had pointed a gun at him and said that he was going to take the officer as a hostage. The defendant testified that he had not pointed his gun at the police officer until after the officer had drawn his gun, that the officer had shot *him* first and that he had shot the police officer in self-defense. During cross-examination, the defendant attempted to question the officer about his familiarity with the police department's standard operating procedures for hostage situations. The trial judge disallowed that line of questioning. On appeal, the defendant argued that he should have been permitted to pursue his cross-examination in order to establish "that the officer's failure to comply with these procedures provided a motive for him to testify falsely at trial and to deny the fact that he shot first." The New Hampshire Supreme Court agreed:

"Although the latitude permitted on cross-examination is within the discretion of the trial court, * * * and the

---

[3] One case does, however, seem to approve admission of the same evidence excluded by the trial court. In *State v. Pew,* 39 Or App 663, 593 P2d 1198 (1979), a criminal defendant and a police officer gave contradictory trial testimony about who attacked whom first. This court held that the defendant could not impeach the officer's credibility by introducing police department records of other citizens' complaints against the officer for excessive use of force. In passing, we did note with apparent approval that the trial court *had* permitted defendant to show that the police officer "was aware of police department procedures for dealing with complaints against officers for using excessive force." 39 Or App at 668.

broad discretion of the trial court to fix the limits of cross-examination applies to attacks upon a witness' credibility * * *, the trial court may not completely deny a defendant the right to cross-examine a witness on a proper matter of inquiry.

"* * * [Defendant] asserts, * * * that the officer fired first and that he acted in self-defense. The question presents a classic credibility question calling for wide and vigorous cross-examination of both the officer and the defendant. * * * We hold that it was reversible error for the trial court to deny the defendant the opportunity to question the officer concerning his knowledge of and compliance with the department's standard operating procedures in a hostage situation in an attempt to establish that the officer's failure to follow the procedures provided him with a motive to fabricate his version of the incident. * * *" 121 NH at 866-67.

We agree with that analysis.

■ ■    As defendant's offer of proof demonstrates, the Portland police department does have in-house procedures that it employs when a civilian accuses an officer of using unnecessary force. Brose was aware of the existence and the substance of those procedures. Assuming that he did use unnecessary force against defendant, an understandable desire to avoid unpleasantness and potential damage to his career might motivate him to testify that defendant was the aggressor in their altercation, with the expectation that defendant's conviction would put to rest the likelihood of any internal police proceedings being brought against him. In addition, although defendant had not filed a complaint against Brose at the time of trial, there is no reason why he could not do so in the future. Brose's familiarity with the internal department procedures is therefore relevant to an attempt to impeach him for bias.[4] The trial court's exclusion of the evidence was an abuse of discretion in this case, where the entire issue turned on credibility.

Reversed and remanded for new trial.

---

[4] Evidence is relevant to the question of bias even if it has "only a mere tendency to prove bias or interest." *State v. Mellinger*, 52 Or App 21, 28, 627 P2d 897 (1981).

**WARDEN, J.,** dissenting.

The majority has properly recognized the questions to be answered: (1) Whether the evidence offered is relevant to show bias, interest or motive affecting the witness' credibility, and (2), if so, whether the trial judge abused his discretion in excluding the evidence. The trouble is that the majority comes up with the wrong answers. Under the facts of this case, the evidence offered and excluded was not relevant to show bias, interest or motive; and even if it had been, the trial judge did not abuse his discretion in excluding it. Therefore, I respectfully dissent.

The majority also correctly recognizes that Oregon does not have a case concerning the kind of cross-examination attempted by defendant here. Still, the majority cites a number of Oregon cases, relying principally on two of them: *State v. Delucia,* 40 Or App 711, 596 P2d 585 (1979), and *State v. Sheeler,* 15 Or App 96, 514 P2d 1370 (1973). In all the cases cited by the majority, there was a relationship peculiar to the witness that provided a motive for the witness to testify, as he did. In *Schmitz v. Yant,* 242 Or 308, 409 P2d 346 (1965); *McCarty v. Hedges,* 212 Or 497, 309 P2d 186, 321 P2d 285 (1958); *O'Harra v. Pundt,* 210 Or 533, 310 P2d 1110 (1957); and *Clevenger v. Schallhorn,* 205 Or 209, 286 P2d 651 (1955), there was evidence that the witnesses were parties to other legal actions that would be directly influenced by the outcome of the case in which each was testifying. In *State v. Guerrero,* 11 Or App 284, 501 P2d 998, *rev den* (1972), when both were in the penitentiary, the witness had become a friend of the party for whom he was testifying. In *State v. Dowell,* 274 Or 547, 547 P2d 619 (1976), the witness had accepted a bribe to refrain from telling what he knew. In *Rhodes v. Harwood,* 280 Or 399, 571 P2d 492 (1977), the witness was personally hostile to the plaintiff. In *State v. Bailey,* 208 Or 321, 300 P2d 975, 301 P2d 545 (1956), the witness had reason to believe that he could avoid prosecution of himself by testifying. In *Delucia,* the witness had a financial stake in the outcome of the criminal proceeding. In *Sheeler,* the witness had reason to believe that he might avoid prosecution if he testified as he did. The facts of this case are closest to those in which the witness was involved in another proceeding that could well be affected by the outcome of the case in

which he was testifying. In this case, however, there was no other proceeding, and it was because there was not that the trial court excluded the testimony. The trial court ruled correctly, and we should affirm.

Because the majority can find no Oregon case in point, it relies on *State v. Ramos,* 121 NH 863, 435 A2d 1122 (1981). That reliance is not convincing. The New Hampshire court based its decision on its own rationale in two other cases: *State v. Howard,* 121 NH 53, 426 A2d 457 (1981), allowing cross-examination of a prosecutrix "concerning her prior sexual activities," and *State v. LaClair,* 121 NH 743, 433 A2d 1326 (1981), allowing cross-examination of a prosecutrix "concerning inconsistent statements regarding her virginity made prior to trial." Although *Ramos* is authority in New Hampshire, we ought not follow it in Oregon.

The majority makes much of the fact that the testimony of Brose and defendant was full of contradictions, as though that was unusual in a criminal case. The majority overlooks the fact that the evidence was offered before defendant had told his story or was required to decide whether he would take the stand. As the majority would have it, a defendant is entitled to cross-examine an officer testifying in a criminal case as to possible disciplinary procedures for an officer's misconduct, even though there have been no disciplinary proceedings instituted or contemplated and at a stage in the trial when the defendant may still elect to decline to testify. Given the majority decision, this defense tactic can be used in any case in which an officer testifies, because by taking the stand the officer puts his credibility in issue. Without some showing that a disciplinary proceeding is pending or is contemplated, there is no relationship peculiar to the officer on which to base impeachment cross-examination of the kind offered here.

The majority should again review the testimony that defendant claims the trial court erroneously excluded. There is nothing in it to demonstrate bias or the reasonable likelihood of it, and bias was purportedly the only reason for offering it. It simply is not relevant, or it has so little relevance to the issue of bias that excluding it could not

have been an abuse of discretion. *Shrock v. Goodell,* 270 Or 504, 528 P2d 1048 (1974).

Finally, OEC 609-1(1), the rule governing impeachments for bias or interest, provides:

> "The credibility of a witness may be attacked by evidence that the witness engaged in conduct or made statements showing bias or interest. However, before this can be done, the statements must be related to the witness and the conduct described, with the circumstances of times, places and persons present, and the witness shall be asked whether the witness made the statements or engaged in such conduct, and, if so, allowed to explain. If the statements are in writing, they shall be shown to the witness."

The law of evidence in civil cases applies in criminal cases as well. ORS 136.430. The evidence offered by defendant is not of any statement or conduct of Brose. It simply does not come within the rule governing impeachment for bias or interest.

I dissent.