Argued and submitted March 16, reversed and remanded
for new trial October 12, 1983

## STATE OF OREGON,
*Respondent,*

*v.*

## TERRY LARKIN DAVIS,
*Appellant.*

### (MB82-317; CA A26266)

670 P2d 192

Ronald K. Cox, Assistant Public Defender, Coquille, argued the cause and filed the brief for appellant.

Sheryl Dawson, Certified Law Student, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Stephen F. Peifer, Assistant Attorney General, Salem.

Before Gillette, Presiding Judge, and Warden, and Young, Judges.

WARDEN, J.

## WARDEN, J.

Defendant appeals his conviction on two counts of menacing. He assigns as error the trial court's (1) refusal to allow a state's witness to be cross-examined with respect to his avoidance of defendant's investigator and (2) failure to give a self-defense instruction to the jury. We reverse and remand for a new trial.

The state's account of the facts only slightly resembles defendant's version. According to the state, on May 20, 1982, defendant and his wife entered the Belle Bee Tavern in Coos Bay shortly after 1:00 a.m. After exiting through the rear door, they again entered the front door, and defendant ordered a beer. Mrs. Charleston, the bartender, refused to serve defendant because of a prior incident. After that refusal, defendant drew a knife and threatened that he would "get her." Charleston's husband asked defendant to leave, and defendant responded by waving the knife around at persons in the bar, including Charleston and Foster, a tavern patron who was about two and one-half feet from defendant. Defendant then backed out the door and stated that he would get them one at a time.

By defendant's account, he entered the tavern to see if the owner was in. He intended to discuss what he believed was Charleston's role in the theft of a hat. Finding the owner absent, he started to leave but was stopped by a man who displayed a gun in his waistband. In order to protect himself, defendant drew a knife and placed it against the man's chest. Simultaneously, a crowd of tavern patrons, at the urging of Charleston, began to rush defendant. Fearing for his safety, he waved the knife, thereby successfully delaying the crowd's approach, and left the Belle Bee.

In his first assignment of error defendant contends that the trial court erred in sustaining, on relevance grounds, the state's objection to evidence that Foster, an alleged victim, had avoided talking to defendant's investigator. That evidence, he argues, would have shown Foster's bias against defendant.

OEC 609-1(1) states that "[t]he credibility of a witness may be attacked by evidence that the witness engaged in conduct or made statements showing bias or interest." We

have recognized that a defendant in a criminal proceeding is entitled, as a matter of federal constitutional right, to cross-examine prosecution witnesses. *State v. Hubbard,* 61 Or App 350, 355, 657 P2d 707, *rev allowed* 294 Or 749, 662 P2d 726 (1983). We stated in *Hubbard* that, although it is generally within the trial judge's discretion to limit the scope of cross-examination for bias, a defendant in a criminal case should be given great latitude to cross-examine, because "[f]ree and vigorous cross-examination is particularly important when prosecution and defense witnesses give sharply conflicting accounts of the facts and the jury must assess the credibility of the witnesses." *State v. Hubbard, supra,* 61 Or App at 356. We concluded that a trial judge may abuse his discretion by completely foreclosing a legitimate defense attempt to cross-examine. 61 Or App at 356.

Although a criminal defendant is allowed broad latitude in cross-examining witnesses, the judge may properly exclude that which is of little or no probative value. *See Shrock v. Goodell,* 270 Or 504, 510, 528 P2d 1048 (1974); *State v. Newlin,* 92 Or 589, 182 P 133 (1919). In *Newlin,* for example, where a witness' employment as a hired detective who expected to get a reward—which itself sufficiently demonstrated his motive—had already been elicited, the court held that it was not error to limit further cross-examination as to his motives. Similarly, in the case at bar the jury was well aware that the witness testifying was one of the persons defendant was charged with menacing and, "while perhaps it would have been as well for the court to have allowed counsel to turn him inside out upon cross-examination, it was not improper for the court to check it when the interest of the witness was as fully disclosed as it was here by what had already been elicited." *State v. Newlin, supra,* 92 Or at 595-96. In the present case, there was no abuse of discretion.

Defendant next asserts that the trial court erred by refusing to give a requested jury instruction on self-defense. The trial court ruled that there was no evidence to support a self-defense claim as to the two individuals the defendant is charged with menacing.

A criminal defendant is entitled to have his theory of the case presented to the jury if there is evidence to support it. *State v. McBride,* 287 Or 315, 319, 599 P2d 449 (1979), *citing*

*State v. Newlin, supra; see also State v. Mitchell,* 59 Or App 151, 650 P2d 992 (1982); *State v. McMullen,* 34 Or App 749, 579 P2d 879 (1978). The trial court has no discretion to refuse to give an instruction supported by the evidence. *State v. McBride, supra,* 287 Or at 319. Defendant's theory of self-defense was premised on his testimony that he drew his knife only to protect himself, first against the man with the gun, then against the group directed by Charleston. Defendant's testimony allowed the inference that Foster and Charleston were members of the group that threatened him. The jury might or might not believe him, but the court could not rule that there was no evidence to support his claim of self-defense.

The trial court should not have refused to instruct the jury on the defense of self-defense.[1] Doing so constituted prejudicial error requiring reversal.

Reversed and remanded for a new trial.

---

[1] *See State v. Charles,* 293 Or 273, 647 P2d 897 (1982), for a discussion of a defendant's duty to retreat when faced with deadly physical force.