Argued and submitted March 4, reversed and remanded for new trial June 19, 1991

## STATE OF OREGON,
*Respondent,*

*v.*

## RICHARD KYLE SMITH,
*Appellant.*

## (88-1313; CA A64283)

813 P2d 1086

Lawrence Matasar, Portland, argued the cause for appellant. With him on the brief were Karen A. Steele and Hoffman, Matasar & Glaeser, Portland.

Jas. Adams, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendant appeals his conviction for possession of a controlled substance, ORS 475.992(4)(b), assigning error to the trial court's failure to give a jury instruction on the defense of entrapment.[1] Reviewing the evidence in the light most favorable to the establishment of facts that would require such an instruction, *Carter v. Mote,* 285 Or 275, 279, 590 P2d 1214 (1979), we reverse.

On September 13, 1988, a United Parcel Service (UPS) driver attempted to deliver a next-day air delivery parcel addressed to "Dick Smith" at "345 S. 14th, Apt. A, St. Helens, Oregon," but learned that no one by that name resided at that address. The driver called his supervisor and, in accordance with UPS policy for handling rush packages, was instructed to open it to find a better address.[2] Inside the package, the driver found a videotape cassette-sized box; inside that box was an envelope; and inside the envelope was a white substance. UPS supervisory personnel contacted law enforcement authorities, who took possession of the package. The white substance tested positive for cocaine.

At the St. Helens Police Department, Detective Lonning checked police files and other records and found that two people by the name of "Richard Smith" lived in St. Helens. One resided at "35 DuBois Lane." The other, defendant, resided at "365 S. 14th, Apt. A." Lonning knew that defendant had previously been arrested and indicted, but not tried, for possession of cocaine. The police decided to prepare a "simulated package" for delivery to defendant. They removed part of the cocaine and mixed the remainder with baking soda. That mixture was then inserted into a package designed to resemble the original packaging. The simulated package re-used the original address label, which read "Dick Smith, 345 S. 14th, Apt. A, St. Helens."

Before delivering the package, Lonning prepared an affidavit in support of an application for a search warrant. In

---

[1] Defendant also challenges the use of an "anticipatory warrant" that was based on the expected police delivery of a simulated package containing cocaine. However, that issue was not preserved below.

[2] The return address was a commercial mail drop that allowed the sender to be anonymous.

it, he stated that "the simulated package will be delivered to Richard Kyle Smith, AKA Dick Smith, at his true address, 365 S. 14th, Apt. A, St. Helens, OR, by an undercover police officer acting as a [UPS] route driver." A warrant was issued for the search of defendant and his apartment. The same day, Lonning disguised himself as a UPS employee and attempted to deliver the simulated package at defendant's residence. No one answered the door. Lonning then resubmitted his original affidavit; a second search warrant, identical to the first, was issued.

On September 16, Lonning, again wearing a UPS delivery person's uniform, parked a UPS truck near defendant's apartment. There were approximately six other police officers hiding in the rear of the truck. Lonning knocked on defendant's door, defendant answered it, and Lonning asked if he was Dick Smith. Defendant responded in the affirmative, accepted the package and placed it on the floor next to the door. He was not asked to sign a receipt or acknowledgment of delivery. Lonning returned to the truck and told the other officers that the package had been delivered. They immediately got out and, with weapons drawn, ran to the door and entered the apartment. Fewer than 30 seconds had elapsed since Lonning's delivery. Defendant was put on the floor, handcuffed and arrested for cocaine possession. The simulated package had not been opened.

When asked to instruct the jury on the defense of entrapment,[3] the trial judge said, "I frankly think entrapment's in the case. Defense counsel's been harping on it since he walked in the door. I think it's part of the case and I intend to give the entrapment instruction, which is [Uniform Criminal Jury Instruction No.] 1105 * * *."[4] The judge later

---

[3] Entrapment has been defined in ORS 161.275:

"(1) The commission of acts which would otherwise constitute an offense is not criminal if the actor engaged in the prescribed conduct because the actor was induced to do so by a law enforcement official or by a person acting in cooperation with a law enforcement official, for the purpose of obtaining evidence to be used against the actor in a criminal prosecution.

"(2) As used in this section, 'induced' means that the actor did not contemplate and would not otherwise have engaged in the proscribed conduct. Merely affording the actor an opportunity to commit an offense does not constitute entrapment."

[4] The uniform instruction reads:

changed his mind and did not give the instruction. On appeal, defendant asserts that there was sufficient evidence to create a jury question as to whether he was induced by the officer's conduct to commit the offense of cocaine possession.

■■■■■■  A defendant need not admit that he committed a crime, or any of its elements, in order to use the entrapment defense. He is entitled to have his theory of the case presented to the jury, if there is any evidence from which jurors could infer that the required elements of the defense were present and if he has submitted an instruction that correctly states the law. *State v. McBride,* 287 Or 315, 599 P2d 449 (1979). When those requirements are met, the trial judge has no discretion to refuse to give the instruction. *State v. McBride, supra; State v. Matthews,* 30 Or App 1133, 1136, 569 P2d 662 (1977). The issue is whether the evidence was sufficient to raise a jury question.[5]

In *State v. McBride, supra,* there was conflicting testimony about why the defendant had climbed into an unmarked police car and whether she had agreed to accept money in exchange for a "car date." The officer testified that, when asked if she was "available," the defendant had responded, "Not really," but then had entered his car and

---

"The defense of entrapment has been raised.

"The commission of acts that would otherwise constitute an offense is not criminal if the person committed those acts because [he][she] was induced to do so by a law enforcement official or by a person acting in cooperation with a law enforcement official, for the purpose of obtaining evidence to be used against the defendant in a criminal prosecution. 'Induced' means that the defendant was not predisposed to, did not contemplate, and would not otherwise have committed the acts constituting the offense. Merely affording the defendant an opportunity to commit an offense does not constitute entrapment.

"The law permits the officers to afford an opportunity for the commission of an offense, and to lend the apparent cooperation of the officers or third parties for the purpose of detecting the offender.

"The burden of proof is on the state to prove beyond a reasonable doubt that this defense does not apply."

[5] At trial, the state asserted that defendant was not entitled to an entrapment instruction, because he had not established the defense "by affirmative evidence." As *State v. McBride, supra,* says, a defendant is entitled to the instruction even if it is based on testimony presented during the *state's* case-in-chief, if that evidence shows a "possible" entrapment. 287 Or at 321. "When the defense of entrapment is raised, the state has the burden of disproving the defense beyond a reasonable doubt. ORS 161.275, 161.190, 161.055." 287 Or at 320 n 5.

said that no one had made her a reasonable offer. He further testified that the defendant had engaged in a conversation about what amount of money would constitute a reasonable offer and had suggested that they go to a place known as Slab Town. The defendant, on the other hand, testified that the officer had given her a ride and had offered her $20, but she did not recall agreeing to take the money as a fee for a sexual act. The Supreme Court concluded that the evidence was sufficient to present a jury question as to whether the defendant had been induced to engage in prostitution. 287 Or at 319. Accordingly, it held that the entrapment instruction should have been given.

In *State v. Hedrick,* 28 Or App 503, 506, 559 P2d 1304, *rev den* 278 Or 393 (1977), the state presented evidence that the defendant had offered money to a grand jury witness in exchange for the witness' agreement not to testify. The defendant testified that he had merely "suggested" that the witness try to get compensated for her testimony. Because the evidence could not reasonably support a conclusion that the police had induced the defendant to commit the crime and, in fact, "amply revealed" that the defendant was predisposed to bribe the witness, it was not necessary to give the entrapment instruction.

■    This case is more like *McBride* than *Hedrick.* First, there was a paucity of evidence that defendant was "predisposed" to commit the crime; the state's only evidence was that, on one occasion, he had informally admitted to a police officer and been charged with possessing cocaine residue. That did not "predispose" him to receiving a UPS shipment of cocaine from an anonymous sender. Second, the officer's role was so dominant and defendant's participation so insignificant that one could conclude that the *officer,* not defendant, generated or manufactured the crime. Third, in both · *McBride* and in this case, the entrapment defense went to whether the defendant had the requisite *intent* to commit the crime. *See State v. McBride, supra,* 287 Or at 320 n 4. Moreover, defendant's testimony suggested that he did not want cocaine in his apartment and that a police officer had only been able to put it there by disguising himself. If the jury believed defendant's testimony, it could reasonably have found that the officer went beyond simply "affording

[defendant] an opportunity" to commit the crime. ORS 161.275(2); *see* n 3, *supra.* The jurors could have concluded that the crime would not have been committed but for police activity.

Other evidence strengthened defendant's argument that he had been entrapped. Lonning testified that deception was used to construct the simulated package and to present himself as a UPS employee. There was no evidence that, without police intervention, UPS would have been able to locate the intended recipient or that the company would have ultimately decided to deliver the package to defendant. According to defendant's testimony, he had never seen the package before Lonning handed it to him, he did not know what it contained and, had he known, he would not have accepted it. He wanted a "clean" house, in the light of his previous arrest for a possessory offense. He held the package only long enough to place it on the floor and had not attempted to open it. At trial, he denied that he had "fronted" money for the cocaine and said that he did not know if the package was intended for his roommate. As we said in *State v. Davis,* 65 Or App 83, 87, 670 P2d 192 (1983), "The jury might or might not believe him, but the court could not rule that there was no evidence to support his [claimed defense]." Although defendant's testimony conflicted with the officer's, when a point is in dispute, the trial court is "not at liberty to refuse an instruction based on [its own] resolution of a fact question." *State v. Castle,* 48 Or App 15, 20 n 3, 616 P2d 510 (1980); *see also State v. Mitchell,* 59 Or App 151, 155, 156, 650 P2d 992 (1982). In short, it is for the jury, not the judge, to decide the facts.

■    Defendant submitted an instruction that correctly stated the law, and the evidence allowed the inference that he had been induced by law enforcement authorities to commit the crime of cocaine possession. Accordingly, he was entitled to the instruction that supported his theory of entrapment. The trial court's refusal to give the instruction constituted prejudicial error. *State v. Lockwood,* 43 Or App 639, 645, 646, 603 P2d 1231 (1979).

Reversed and remanded for a new trial.